

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7954 | **DATE** | 10/18/2000 |
| **CASE TITLE** | AA SALES & ASSOCIATES, INC., et al vs. JT&T PRODUCTS CORP., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    ENTER MEMORANDUM OPINION AND ORDER: there is no genuine issue of material fact on plaintiffs' claim for declaratory judgment, and defendants are entitled to a judgment as a matter of law. Defendants' motion for summary judgment is, therefore, granted. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | OCT 19 200 | | |
| ✓ | Docketing to mail notices. | | date docketed | | 27 |
| ✓ | Mail AO 450 form. | ED-7 FILED FOR DOCKETING 00 OCT 18 PM 3:15 | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| TBK | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AA SALES & ASSOCIATES, INC.
and TRADE AMERICA CORP.,

    Plaintiffs,

v.

JT&T PRODUCTS CORP. and
JEROME R. NELSON,

    Defendants.

No. 98 C 7954
Paul E. Plunkett, Senior Judge

DOCKETED
OCT 19 2000

OCT 19 2000

## MEMORANDUM OPINION AND ORDER

Defendants JT&T Products Corporation ("JT&T") and Jerome R. Nelson ("Nelson") have filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment on the declaratory judgment claim in Count I, the sole remaining claim in this suit. For the reasons set forth below, the motion is granted.

### Facts

In January 1993, the parties executed a settlement agreement that ended pending litigation between them. (Pls.' LR 56.1 (b)(3)(A) Stmt. ¶ 6.) Among other things, the settlement agreement requires:

> JT&T, its assigns and successors, [to] pay, . . . to Trade America and AA Sales, their successors and assigns, the amount of 6% each (12% total) as a commission on all gross sales (excluding JT&T part numbers 7000, 7017 and 7019) to Ristance Corporation, BWD Corp. or any other division, subsidiary, affiliate or parent of Echlin Corp. . . . from the date of the first sale to the Ristance Account beginning in,

27

approximately, September 1991 and continuing for as long as JT&T, its successors and assigns continue to sell to the Ristance Account.

(Defs.' LR 56.1 Stmt., Ex. B ¶ 1.) Plaintiffs received commissions on the Ristance Account until May 1998, but received no payments thereafter. (Pls.' LR 56.1 (b)(3)(A) Stmt. ¶ 15.)

That same month, JT&T sold its assets to The Best Connection, Inc. (Id. ¶ 16.) Pursuant to the asset purchase agreement, The Best Connection, Inc. assumed some, but not all of JT&T's liabilities. (Pls.' LR 56.1(b)(3) Stmt., Ex. 2, § 1.02, Ex. B.) One of the liabilities it did not assume was the liability to Trade America and AA Sales under the settlement agreement. (Id.; Pls.' LR 56.1(b)(3)(A) Stmt. ¶ 17.) Since it sold its assets, JT&T has refused to pay commissions to plaintiffs although The Best Connection, Inc. continues to make sales to the Ristance Account. (Id. ¶¶ 18-19; Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 24.)

Plaintiffs seek a declaration that JT&T is obligated to pay them commissions as long as The Best Connection, Inc. sells to Ristance.

## **Discussion**

In our Memorandum Opinion and Order denying defendants' motion to dismiss, we held that the settlement agreement was ambiguous as to whether JT&T is liable for commissions on sales its successors make to Ristance, but left open the question of whether The Best Connection, Inc. was, in fact, a successor to JT&T. (See 8/4/99 Mem. Op. & Order at 3.) In the course of deciding this motion, which focuses on the successor issue, we realized that the two issues must be decided together. Accordingly, we must revisit our decision on the motion to dismiss to decide the motion pending before us.

2

As their counsel made clear at oral argument, the settlement agreement, from plaintiffs' perspective, was about fair competition. Having cultivated the relationship between JT&T and Ristance, plaintiffs believed they were entitled to commissions on the sales JT&T made to Ristance. But that was not all. They also wanted to be paid commissions on sales made by any entity that JT&T allowed to step into its shoes as Ristance's supplier because, as a practical matter, plaintiffs would not be able to compete with such an insider for the Ristance business. If, however, JT&T went out of business without transferring its relationship with Ristance to anyone else, plaintiffs expected that their commission payments would cease and they would compete on a level playing field with all other "strangers" for the Ristance business.

That may be what plaintiffs wanted, but the settlement agreement that they signed determines what they got. That agreement is governed by Illinois contract law,[1] see Abbott Labs. v. Alpha Therapeutic Corp., 164 F.3d 385, 387 (7th Cir. 1999), which requires us to ascertain and effectuate the parties' intentions. Lewis X. Cohen Ins. Trust v. Stern, 297 Ill. App. 3d 220, 232, 696 N.E.2d 743, 751 (1st Dist. 1998). We do so by examining the contract as a whole and giving the contract terms their ordinary meanings. Id. If the contract is unambiguous, we must determine the parties' intentions "solely from the plain language of the contract," without relying on extrinsic evidence for guidance. Id. (internal quotation marks and citation omitted). If, however, "the language of the contract is susceptible to more than one meaning, . . . . parol evidence [may] be admitted to aid the trier of fact in resolving the ambiguity." Air Safety, Inc. v. Teachers Realty Corp., 185 Ill. 2d 457, 462-63, 706 N.E.2d 882, 884 (1999).

---

[1] The parties agree that Illinois law controls.

3

The pivotal provision of the settlement agreement is paragraph one, which provides:

> JT&T, its assigns and successors, will pay, . . . to Trade America and AA Sales, their successors and assigns, the amount of 6% each (12% total) as a commission on all gross sales (excluding JT&T part numbers 7000, 7017 and 7019) to Ristance Corporation, BWD Corp. or any other division, subsidiary, affiliate or parent of Echlin Corp. . . . from the date of the first sale to the Ristance Account beginning in, approximately, September 1991 and continuing for as long as JT&T, its successors and assigns continue to sell to the Ristance Account.

(Pls.' Resp. Mot. Summ. J., Ex. 1, ¶1 at JT000002.) Plaintiffs contend that this provision: (1) requires JT&T to pay them commissions on sales made to Ristance by either JT&T or its successors; and (2) contemplates that any person or entity that acquires the Ristance business in any way from JT&T is a successor. Defendants contend that this provision: (1) requires JT&T to pay commissions to plaintiffs only until a successor succeeds to the Ristance business, at which point the successor is liable; and (2) contemplates that only corporate successors, that is, entities that acquire both JT&T's assets and its liabilities, are successors. We agree with defendants.

The key to understanding this paragraph lies in the definition of the term "successor." Successor, when used with reference to a corporation, is unambiguous. It means "another corporation which, through amalgamation, consolidation, or duly authorized legal succession, has acquired the rights and assumed the burdens of the initial corporation." Toepper v. Brookwood Country Club Road Ass'n, 204 Ill. App. 3d 479, 486, 561 N.E.2d 1281, 1285-86 (2d Dist. 1990); see BLACK'S LAW DICTIONARY 746 (abridged 5th ed. 1983) (defining successor as "[t]erm with reference to corporations, generally means another corporation which, through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of first

4

corporation.")[2] To be a successor, a corporation must entirely absorb its predecessor: its business, assets, rights and liabilities. At that point, the predecessor ceases to exist, and the successor becomes liable for the predecessor's debts. Krull v. Celotex Corp., 611 F. Supp. 146, 148 (N.D. Ill. 1985) ("[T]he universal rule applicable to mergers or consolidations is that, by operation of law, the successor corporation assumes all debts and liabilities of the predecessor corporation precisely as if it had incurred those liabilities itself.") Given the definition of successor, paragraph one, which requires "JT&T, its assigns and successors," to pay commissions to plaintiffs for "as long as JT&T, its successors and assigns continue to sell to the Ristance Account" can only mean that JT&T will pay commissions on sales it makes to Ristance and JT&T's successors will pay commissions on sales they make to Ristance.

Even if the term successor were ambiguous, the legal definition would still be the only sensible interpretation in the context of the agreement as a whole. Plaintiffs' interpretation, for example, renders paragraph seven of the agreement pointless. In relevant part, that paragraph provides:

> As a material inducement for the Plaintiffs to enter into this Settlement Agreement and Mutual Release, Nelson and JT&T hereby covenant and agree not to divert any sales from the Ristance Account . . . to any entity in which Nelson, any member of Nelson's immediate family or any nominee of Nelson, maintains any legal or equitable ownership or control.

---

[2]Like the parties, we were unable to find an Illinois case that characterizes the term successor as either ambiguous or unambiguous. Plaintiffs say that the Court in Johnson v ServiceMaster, 245 Ill. App. 3d 353, 627 N.E.2d 1 (1st Dist. 1992) found the term to be ambiguous, but the case contradicts that claim. What the court actually said was: "Both sides have argued at great length on the question of whether a corporation may be a successor and have cited many cases. They have also argued at great length on the question of whether 'successors' and 'assigns' have the same meaning. Those arguments need not be addressed . . . ." Id., 254 Ill. App.3d 353, 363, 627 N.E.2d 1, 7.

(Pls.' Resp. Mot. Summ. J., Ex. 1, ¶ 7 at JT000006.) The term successor, as plaintiffs define it, includes any entity to whom JT&T diverts sales regardless of who owns or controls it. If JT&T is liable for commissions on sales made by related entities, why would the parties forbid it from transferring the business to such entities? More importantly, this provision shows that partial asset transfers were within the parties' contemplation at the time they drafted the agreement. Their decision to forbid JT&T to make such transfers to related entities, but not to unrelated entities, suggests that the parties made a deliberate choice to exempt arms-length asset transfers from the scope of the agreement.

Plaintiffs' interpretation is also in tension with paragraph nine of the agreement, which provides:

> JT&T, it [sic] successors and assigns, hereby covenant and agree to provide [plaintiffs] written notice of any intention to cease doing business with the any [sic] Echlin Division including Ristance at the same time such intention is communicated to the Echlin Division. Upon receipt of such notice [plaintiffs] will be free to compete for such business.

(Pls.' Resp. Mot. Summ. J., Ex. 1, ¶ 9 at JT000008.) If successors were defined as broadly as plaintiffs contend, this notice provision would be operative in only one highly improbable circumstance: JT&T stops doing business and destroys the assets attendant to its relationship with Ristance. Any other disposition of those assets would constitute a transfer of the Ristance business,[3] leaving JT&T perpetually liable for commissions and obviating the need for any notice. We cannot

---

[3]Defendants assert that JT&T did not actually transfer the Ristance account to The Best Connection, Inc. because JT&T had no right or entitlement to the business. (Defs.' Reply at 8.) As evidenced by the settlement agreement and the prior litigation between them, however, both parties have assumed that JT&T's on-going business relationship with Ristance is a valuable and transferrable asset. Because defendants questioned the propriety of that assumption for the first time in their reply brief, we deem them to have waived the issue.

6

sanction a contract interpretation that creates a fantastic condition precedent to one of the party's obligations.

In sum, the legal definition of successor is the only one that effectuates all of the provisions of the settlement agreement and avoids an absurd result. Thus, in paragraph one of the settlement agreement, JT&T agreed to make commission payments to plaintiffs on the sales it made to Ristance, and agreed that its successors would do the same. Once a successor starts selling to Ristance, the agreement holds the successor, not JT&T, liable for the commission payments. It is undisputed that JT&T no longer sells anything to Ristance. (Pls.' LR 56.1(b)(3)(A) Stmt. ¶ 19.) It is, therefore, no longer obligated to make commission payments to plaintiffs.[4]

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact on plaintiffs' claim for declaratory judgment, and defendants are entitled to a judgment as a matter of law. Defendants' motion for summary judgment is, therefore, granted. This is a final and appealable order.

**ENTER:**

**UNITED STATES DISTRICT JUDGE**

DATED: 10-18-00

---

[4] We express no opinion on whether The Best Connection, Inc., which appears on this record to be an asset purchaser, is subject to successor liability under Illinois law.

7